IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOLORES E. JENNINGS, JR., : <br> Plaintiff, : <br> vs. : <br> : <br> MICHAEL J. ASTRUE, : <br> Commissioner of Social Security, : <br> Defendant. : <br> : | CIVIL NO. 09-1642 |

## MEMORANDUM OPINION AND ORDER

**Rufe, J.**                                                            **January 31, 2011**

Plaintiff Dolores Jennings filed this action pursuant to 42 U.S.C. § 405(g) & §1383(c)(3), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act. Jennings seeks reversal of the Commissioner's decision on grounds that the Administrative Law Judge's ("ALJ") finding she is not disabled was not based on substantial evidence. The Commissioner argues that the ALJ's determination was supported by substantial evidence and should be upheld.

United States Magistrate Judge David R. Strawbridge issued a Report and Recommendation ("R&R"),[1] finding the ALJ's decision was not based on substantial evidence, and recommending that this Court remand the final decision of the Commissioner for full and proper consideration of all the evidence, including the opinions and records of Plaintiff's treating physician. Plaintiff timely objected to the Magistrate's recommendation that the case be

---

[1] See Local R. Civ. Pro. 72.1.I(a); 28 U.S.C. § 636(b)(1)(B).

remanded, rather then reversed. Upon this Court's careful, independent consideration of the administrative record, the parties' submissions, and the applicable law, the Court will approve and adopt the R&R's finding that the ALJ's disability determination was not supported by substantial evidence. But because the record is fully developed and substantially clear as to the question of disability, the Court will sustain Plaintiff's Objections to the R&R. Therefore, the decision of the Commissioner will be reversed, benefits will be awarded, and this matter shall be remanded solely for the calculation of social security disability insurance benefits, based upon a disability-onset date of September 20, 1994.

**I. BACKGROUND**

A.   MEDICAL HISTORY AND BACKGROUND

Dolores Jennings, is a fifty-seven-year-old woman,[2] who worked for approximately sixteen years as a telephone maintenance administrator.[3] Jennings applied for disability insurance benefits on August 8, 2003,[4] alleging she was unable to work because of a combination of several neurological impairments, which cause constant pain to radiate throughout her neck,

---

[2] R. 192, 197.

[3] R. 198.

[4] R. 195. Although Plaintiff did not file this claim for disability insurance benefits until 2003, her application relates back to a previous application she filed on July 27, 1994. That application was denied initially, on reconsideration, and at the hearing level, per a decision issued by an ALJ on May 23, 1998. R. 42. Although the ALJ presiding over the first hearing for the 2003 claim did not explicitly state that this filing related back to the previous filing, he noted that "the Social Security Administration [had] failed to produce the record related to the prior decision; and to preclude re-adjudication under those circumstances, without at least making the prior file available to the claimant, could possibly be an infringement of the claimant's due process and equal protection of the laws." R. 43. No party to this action has objected to the claimed onset date of September 20, 1994.

shoulders, arms, and hands.[5] Her alleged disability-onset date is September 20, 1994; her date last insured is December 31, 1998.[6] The issue before this Court is whether Jennings was disabled under sections 216(i) and 223(d) of the Act between the alleged-onset date and her date last insured.

Jennings has suffered from escalating pain in her neck, shoulders, arms, and hands since 1991, when she first began experiencing pain and numbness in her right arm.[7] Since then, she has undergone three surgeries in an attempt to resolve her medical issues.[8] After her first surgery, she came under the care of Dr. James Hunter, an orthopedic and hand surgeon who treated her from 1992 until his retirement in 1999.[9] Although Jennings attempted to return to work after each surgery, each attempt failed.[10] Finally, on September 20, 1994, Dr. Hunter concluded there "was nothing to do at this point other than to place the patient at complete rest," because she was "disabled and . . . not able to work."[11]

In a 1995 and a 1999 deposition, conducted in connection with a worker's compensation

---

[5] R. 196. Because Judge Strawbridge comprehensively discusses the specifics of Jennings's medical history in his R&R, it is unnecessary to provide an in-depth description here. See R&R at 2–4.

[6] R. 192.

[7] R. 196–200, 301, 318.

[8] The first surgery, performed on August 12, 1991, was a right carpal tunnel release. R. 321. After that surgery failed to resolve Jennings's symptoms, she was diagnosed with a "bilateral severe brachial plexopathy." R. 429. She next underwent right brachial plexus surgery on February 1, 1993. Finally, on February 21, 1994, she underwent surgery on the right median nerve.

[9] R. 581, 567.

[10] R. 297 (note from Dr. Hunter stating that after the first surgery, "[p]laintiff has been given a disabled statement for Bell Telephone. She tried to return to work for six weeks. This has been a complete failure); R. 434 (Hunter note indicating that Jennings returned to her desk job three weeks after her second surgery); R. 268 (recommending that Jennings be removed from work on a permanent basis after the third surgery).

[11] R. 265–66.

claim,[12] Dr. Hunter provided extensive testimony about Jennings's treatment and medical condition in the years between her disability onset and her date last insured. In each, Hunter affirmed his medical opinion, as Jennings's treating physician, that Jennings was completely disabled and unable to return to work.[13]

B. PROCEDURAL HISTORY

The procedural history of Plaintiff's claim is complex. To date, this second application for disability benefits—which has been pending since October, 2003—has been the subject of three administrative hearings and three appeals to the Social Security Administration's Appeals Counsel. Two of the appeals resulted in remands; the third is before this Court. Plaintiff's application was first denied at the initial-review level on October 21, 2003.[14] Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was granted.[15] ALJ Sylvester A. Puzio issued an unfavorable ruling on June 23, 2005,[16] but the Appeals Council remanded the case for further consideration on October 14, 2005.[17] After the second hearing

---

[12] Jennings's employer repeatedly attempted to terminate her Worker's Compensation benefits between 1997 and 2003. At each hearing, the Worker's Compensation Judge found that Jennings was completely disabled, and that the medical opinions of Dr. Hunter were persuasive and credible. R. 139, 120.

[13] R.461–62, 577 ("And she is more disabled now than I realized in the past and I can pass her by any of the AMA tables and she's a hundred percent disabled. That's where she is and there is verification for it all over the table here with this evaluation"); see also R. 500.

[14] R. 69–72.

[15] R. 654.

[16] R. 42–51.

[17] R. 54–56.

before the ALJ, held on February 2, 2007, ALJ Puzio again denied Plaintiff's claim.[18] The Appeals Council then remanded the case a second time, directing that another ALJ be assigned to the case, and directed the new ALJ to "obtain evidence from a medical expert qualified in orthopedics, if available," and a vocational expert.[19]

The third hearing—which is the basis of this appeal—was held on September 22, 2008 before ALJ George C. Yatron.[20] Like ALJ Puzio, ALJ Yatron issued an unfavorable decision, finding that Plaintiff was not disabled as defined in the Act during the four-year period between her disability-onset date and the date last insured. On February 20, 2009, the Appeals Council denied her request for review.[21] Plaintiff then initiated the present action on April 17, 2009.

On August 7, 2009, this matter was referred to Magistrate Judge David Strawbridge for a Report and Recommendation. Magistrate Judge Strawbridge recommended that the Court remand the case to the ALJ for further proceedings. Plaintiff timely filed her objections, which were limited to the Magistrate Judge's recommendation that the case be remanded, rather then reversed with the award of benefits.

## II. STANDARD OF REVIEW

A court reviewing a Social Security case must base its decision on the record of the

---

[18] R. 60–68.

[19] R. 96–99.

[20] R. 745.

[21] R. 5.

administrative proceedings and the pleadings of the parties.[22] The Court's review of legal issues is plenary, but its factual review is limited.[23] Accordingly, our review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."[24] Therefore, the Commissioner's decision to deny benefits must be upheld if it is supported by "substantial evidence."[25] And while "substantial evidence" is less than a preponderance, it is "more than a mere scintilla."[26] It therefore "must be such as a reasonable person would accept as adequate to support a conclusion."[27] The substantial evidence standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."[28] Despite the deference to administrative decisions, however, "courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence."[29]

"A district court, after reviewing the decision of the Secretary may, under 42 U.S.C.§ 405(g) affirm, modify, or reverse the Secretary's position with or without a remand to the

---

[22] 42 U.S.C. §405(g).

[23] Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

[24] See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

[25] 42 U.S.C. § 405(g).

[26] Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

[27] Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986).

[28] Schaudeck, 181 F.3d at 431.

[29] Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).

Secretary for a rehearing."[30] However, the district court may only award benefits when "the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits."[31] If those conditions are met, "it is unreasonable for the court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would only result in further delay in the receipt of benefits."[32]

Finally, a district court must review *de novo* those portions of a magistrate judge's report and recommendation to which a party has objected,[33] and may, in its discretion, "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[34]

## III. DISCUSSION

A. SOCIAL SECURITY LAW

Disability determinations before an ALJ "involve shifting burdens of proof."[35] The claimant initially satisfies the burden of showing she is disabled by demonstrating that she cannot return to her customary occupation.[36] Once the claimant's initial burden is met, the burden shifts to the Commissioner, who must show that the claimant can still engage in substantial gainful

---

[30] Gilliand, 786 F.2d at 185.

[31] Id. at 184 (gathering cases); see also Morales v. Apfel, 225 F.3d 310, 319–20 (3d Cir. 2000).

[32] Id. at 185.

[33] 28 U.S.C. § 636(b)(1)(c).

[34] Id.

[35] Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

[36] 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3).

activity.[37]

This burden-shifting process follows a five-step sequential evaluation process promulgated by the Social Security Administration ("SSA").[38] At step one, the ALJ must determine whether the applicant is currently engaging in "substantial gainful activity"; if the ALJ so finds, the claim is denied.[39] In step two, the ALJ must determine whether the claimant is suffering from a severe impairment.[40] If the claimant suffers from a severe impairment, the ALJ next compares the claimant's impairment to a list of impairments presumed to preclude any gainful work, which are listed in Part 404, Subpart P, Appendix 1 ("listed impairments").[41] If the applicant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four and five. At step four, the ALJ must determine whether the applicant has the residual functional capacity to perform her past relevant work.[42] If the applicant proves she cannot resume her former occupation, the burden shifts to the Commissioner at step five. The Commissioner must demonstrate that the applicant is capable of performing other work available in the national economy.[43] If the Commissioner cannot demonstrate that the applicant is capable of other work, the ALJ must find the applicant to be disabled.

---

[37] 20 C.F.R. §§ 404.1520(b), 416.920(b).

[38] 20 C.F.R. §§ 404.1520, 416.920; see also, Sykes v. Apfel, 228 F.3d 259, 262–63 (3d Cir. 2000).

[39] 20 C.F.R. §§ 404.1520(b), 416.920(b); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

[40] 20 C.F.R. §§ 404.1520(c), 416.920(d).

[41] See 20 C.F.R. §§ 404.1520(d), 416.920(d).

[42] 20 C.F.R. §§ 404.1520(e), 416.920(e).

[43] Id.; See also Plummer, 186 F.3d at 427.

B.  THE ALJ'S DECISION

The ALJ's conclusion that Jennings was not disabled depended principally on his findings that Jennings had the residual functional capacity to perform a limited range of sedentary work at step five. The primary bases for that conclusion were: 1) the ALJ's determination that the Plaintiff's subjective complaints of pain were not completely credible; 2) the testimony of the impartial medical expert Dr. Brad Rothkopf, M.D; and 3) the vocational expert's answer to the ALJ's hypothetical question, which was based on the ALJ's determination of Jennings's residual functional capacity.[44]

C.  THE REPORT AND RECOMMENDATION

In Magistrate Judge Strawbridge's Report & Recommendation, he considered each of Jennings's challenges to the ALJ's decision,[45] and concluded that the ALJ's disability determination was not supported by substantial evidence. The ALJ's primary error—in Judge Strawbridge's view—was his improper determination that Jennings had the residual functional capacity to perform limited sedentary work. Because of the ALJ's flawed residual functional capacity analysis, Magistrate Judge Strawbridge found that substantial evidence did not support the ALJ's disability determination and recommended that this case be remanded to the ALJ for a further determination.

---

[44] R. 11.

[45] Jennings challenged the ALJ's decision on five grounds, arguing that the ALJ erred by: (1) failing to obtain testimony from a medical expert qualified in orthopedics, as recommended by the Appeals Council's remand order; (2) failing to identify all of her severe impairments at step two; (3) failing to recognize that her impairments met or equaled one of the applicable listings at step three; (4) improperly disregarding medical evidence and Plaintiff's subjective complaints of pain; and (5) improperly relying upon the vocational expert's opinion. R&R at 6.

Plaintiff's sole objection to the R&R is that because substantial evidence on the record as a whole establishes disability and further delay would be unjust, this Court should now award Plaintiff her disability insurance benefits.[46]

## IV. ANALYSIS

The primary issue is whether the record is "substantially clear as to the question of disability" and merits a reversal and award of benefits by this Court. Neither Plaintiff nor Defendant objects to Magistrate Judge Strawbridge's conclusion that the ALJ's determination was not supported by substantial evidence. Our independent review of the record supports the Magistrate's conclusion; it is apparent that the ALJ erred in applying the relevant legal standards to the facts of this case. In particular, the ALJ improperly and repeatedly credited the testimony of a non-treating and non-examining medical expert over the opinions of the Plaintiff's treating and examining physician and Jennings's subjective complaints of pain without justification. These errors undermine the ALJ's residual functional capacity finding, and impacted the ALJ's determinations at step two, step three and step five.

The primary task now before the Court is to determine if the record is fully developed as to the question of disability, and merits reversal, as opposed to remand. Because we find that the fully-developed record contains substantial evidence showing that Jennings was disabled during the relevant time frame, we will sustain Plaintiff's objection.

---

[46] R&R at 37.

1.  Substantial Evidence Supports the Conclusion that Jennings's Right Brachial Plexopathy was a "Severe" Condition.

Here, although the ALJ found that Jennings right carpal tunnel was a severe impairment,[47] he concluded—unlike the two prior ALJ opinions—that Jennings's right brachial plexus thoracic outlet syndrome was not "severe." In contrast to the common definition of "severe," the Social Security Administration's position is that an impairment must be considered "severe" unless it is a "slight abnormality," having "no more than a minimal effect on a person's ability to work."[48] If the ALJ does not find a severe impairment, disability benefits are denied at step two of the sequential evaluation.

In concluding that one of Jennings's claimed impairments was not severe, the ALJ placed special weight on a May 8, 1997 medical report, wherein Dr. Hunter noted that "it has become very difficult to explain why the patient achieved such little satisfaction from her previous surgery," and that Jennings had not engaged in physical therapy for more then eighteen months.[49] The ALJ did not explain, however, why the lone May 8, 1997 report outweighed the "detailed and thorough history of claimant's medical treatment," which two prior ALJ decisions considered a sufficient basis for concluding that Jennings's neurological impairments were severe.

Although this error did not cause the ALJ to deny benefits at step two, or impact his

---

[47] See 20 C.F.R. §§ 404.1520, 416.920.

[48] Sincavage v. Barnhart, 171 F. Appx. 924, 926 (3d Cir. 2006); Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546–47 (3d Cir. 2003).

[49] R. 17.

decision at step three,[50] "his refusal to accept Jennings's brachial plexopathy or thoracic outlet syndrome as severe may have altered his evaluation of Dr. Rothkopf's testimony, and that of Plaintiff's treating physicians"[51] regarding Plaintiff's limitations. In turn, this error potentially impacted his assessment of Plaintiff's residual functional capacity and his analysis at step five, where he found Plaintiff was not disabled.

2. Substantial Evidence Demonstrates that Jennings Did Not Have the Residual Functional Capacity to Perform Limited Sedentary Work.

The ALJ's finding that Plaintiff had the residual functional capacity to perform limited sedentary work improperly failed to consider the evidence provided by Plaintiff and her treating physicians as to her pain and functional limitations. "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[52] In this case, the ALJ determined that Jennings was capable of performing sedentary work, but "could not perform continuous repetitive motions with her hands and she may have been required to keep [her] hands close to her body."[53] The SSA defines work as "sedentary" when it:

[I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or

---

[50] The ALJ relied solely on the testimony of the medical expert, Dr. Rothkopf, to determine if Jennings met the criteria for a listed impairment. R. 17–18. Dr. Rothkopf's testimony was not limited to the impairments the ALJ found severe at step two. Id.

[51] R&R at 30.

[52] Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (internal quotation omitted); see also 20 C.F.R. § 404.1545(a).

[53] R. 18.

carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The ALJ found that during the relevant period, Jennings was able to "lift ten pounds on an occasional basis, stand and/or walk for two hours in any eight-hour period, and sit for si[x] hours in any eight-hour period."[54] As the Magistrate Judge properly concluded, however, the ALJ's "reasoning was based upon an erroneous view of the record," and consequently, was not supported by substantial evidence.[55]

In determining Jennings's residual functional capacity, the ALJ's primary error was his failure to attribute proper weight to the records and opinions of Dr. James Hunter, Jennings's treating physician from 1992 to 1999,[56] or alternatively, to provide an explanation for his rejection of that evidence. In the record, which contains treatment notes, EMG studies, depositions, and letters, Dr. Hunter repeatedly opined that Jennings was "permanently"[57] and "completely disabled,"[58] had "remained totally disabled from September, 1994 to the present time,"[59] and was unable to "perform any type of work."[60]

Because Dr. Hunter's opinions were based upon a "'detailed, longitudinal picture' of

---

[54] R. 18.

[55] R&R at 8.

[56] R. 581, 252–319.

[57] R. 456 (Deposition, July 12, 1995); R. 500 (Letter, Aug. 19, 1999); R. 567 (Deposition, Dec. 13, 1999).

[58] R. 268 (Treatment Note, Sept. 20, 1994).

[59] R. 500.

[60] R. 578 (Deposition, Dec. 13, 1999).

Jennings's impairments,"[61] they were entitled to "great weight."[62] The ALJ concluded, however, that Jennings was capable of sedentary work. This conclusion directly conflicts with Dr. Hunter's opinion as to the extent of Jennings' limitations.[63] And although the ALJ was entitled to reject Dr. Hunter's opinions, he was required to explain his basis for doing so: "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation, or lay opinion."[64]

Here, the ALJ did not justify his refusal to properly credit Dr. Hunter's opinion, and

---

[61] Because the Magistrate Judge's R&R contains a highly detailed summary of Dr. Hunter's records, it is unnecessary to conduct a specific inventory in this opinion. R&R at 8–13. It is sufficient to note that Dr. Hunter's opinions and records span seven years, and contains treatment notes, EMG studies, and two depositions provided in connection with a worker's compensation claim that Jennings brought against her employer. Prior to his retirement, Dr. Jennings was a "well-recognized" hand-surgery specialist. R. 17.

[62] See, e.g., Morales, 225 F.3d at 317 (noting that "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time") (quoting Plummer, 186 F.3d at 427; see also, Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Frankenfield v. Bowen, 881 F.2d 37, 40–41 (3d Cir. 1989).

[63] As Magistrate Judge Strawbridge noted:

The ALJ determined that Jennings could perform sedentary work where she "**may** have been able to keep her hands close to her body," and in his hypothetical to the VE, he described Jennings as "unable to do the same repetitive motion bilaterally, continuously throughout the day, [but] able to do various tasks bilaterally on an occasional basis throughout the day." Dr. Hunter, however, while acknowledging that she was able to move her arms and perform certain tasks, considered her disabled from September 20, 1994, her disability onset date, through her date last insured. In July of 1995, he opined that she could only reach out or over her head for "short ten, fifteen-minute periods [to run her home]" and recalling her inability to work "a very sedentary job in April of 1994, determined that she could not succeed in even an extremely restrictive-work setting. Similarly, in December of 1999, Dr. Hunter opined that she was disabled and that "overhead activities or any out stretched arm activities are completely eliminated. She can do them, she can do, reach forward and do things, but she can't repeat it.

R&R at 13–14 (internal citation omitted).

[64] Morales, 225 F.3d at 317–18.

"made no particular reference to Dr. Hunter's opinions or records" in determining Jennings's residual functional capacity.[65] His only specific discussion of Dr. Hunter's records was in his step two determination.[66] There, the ALJ stressed the May 8 report discussed *supra*,[67] and concluded that Jennings's right brachial plexopathy was not severe. In so doing, the ALJ failed to take into account the voluminous evidence of record supporting Dr. Hunter's view that Jennings's impairments were completely disabling.[68]

Instead of crediting (or discrediting) Dr. Hunter's opinion, the ALJ relied primarily on the testimony of the medical expert, Dr. Brad Rothkopf, a cardiologist who had neither treated nor evaluated Jennings.[69] Where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"[70] In determining which opinion to credit, the ALJ was required to consider factors such as the examining relationship, treatment relationship, supportability and consistency of the opinion, and the physician's specialty.[71] Instead, with no explanation, the ALJ rejected the opinion of a well-respected hand specialist who had treated the

---

[65] R&R at 16.

[66] R&R at 15.

[67] Notably, the May 8 report does not necessarily detract from Dr. Hunter's repeatedly expressed opinion that Jennings was completely disabled. Instead, as the Magistrate observed, Dr. Hunter's comment could "merely speak to the complexity and seriousness of her condition." R&R at 16.

[68] See Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (In determining disability, the ALJ is required to take into account other evidence of record that fairly detracts from its weight.).

[69] As the Magistrate Judge noted, "[t]he record is silent on the question of why the ALJ called upon the expertise of a cardiologist when claimant's symptoms were clearly of a neurologic and orthopedic nature." R&R at 17 n.4.

[70] Morales, 225 F.3d at 317 (internal quotation omitted).

[71] 20 CFR § 404.1527(d)(1)–(6).

-15-

claimant for almost seven years, in favor of an after-the-fact assessment by a cardiologist who had never examined or treated Jennings. There is no evidence that Dr. Rothkopf had any expertise or experience in the treatment and evaluation of the type of neurological impairments presented by Jennings. Because of the absence of any explanation by the ALJ for crediting Dr. Rothkopf's testimony, rather than Dr. Hunter's, or any objective medical evidence contradicting Dr. Hunter's medical assessments,[72] the court finds that the ALJ's residual functional capacity determination is not supported by substantial evidence.

The ALJ's assessment of Jennings's credibility was also flawed. After determining Jennings's residual functional capacity, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the . . . residual functional capacity assessment."[73]

---

[72] The record also contains the treating records and opinions of three other physicians: Dr. Fried, Dr. Wehbè, and Dr. Park. Jennings had only two visits with Dr. Wehbè; both occurred after her last date insured. In his evaluations, Wehbè noted that Jennings's "range of motion was full and equal bilaterally." R. 249. Later, he suggested that she would benefit from surgery on her bilateral wrists and her right thoracic nerve. R. 247. Dr. Hunter referred Jennings to Dr. Fried in October of 1999, who testified in February, 2003 that Jennings was "not capable of repetitive activities or aggressive activities on any regular basis[]" and that her ability to lift "falls within strict sedentary, less than ten pounds on a non-repetitive basis." R. 515.

In the R&R, the Magistrate considered—and rejected—the Commissioner's argument that Fried and Wehbè's opinions were consistent with the ALJ's residual functional capacity determination. R&R at 21. The Magistrate conceded that Dr. Wehbè's findings, were, to some degree, consistent with the ALJ's conclusions, but concluded that Dr. Fried's records reflected a degree of limitation not properly reflected in the ALJ's residual functional capacity determination. Id. Moreover, the Magistrate faulted the ALJ for his failure to explain whether "he was rejecting or crediting those opinions where they were inconsistent with Dr. Hunter's findings."

The Magistrate found, however, that the ALJ properly afforded "less than substantial weight" to Dr. Park's physical residual functional capacity assessment of Jennings, which was prepared on May 22, 2008. R&R at 22. In that assessment, Dr. Park found that since 1994, Jennings has been unable to sit for more than five (5) minutes, and unable to stand/walk for a total of two or more hours in any eight hour period. R&R at 23. Dr. Park did not begin treating Jennings until 2004, but made findings about Jennings residual functional capacity in 1994. Because the basis of those findings were unclear, the Magistrate agreed with the Commissioner's argument that they were not probative of Jennings's residual functional capacity between 1994 and 1998. R&R at 22.

[73] R. 19.

Generally, a claimant's subjective testimony of pain, when corroborated by medical evidence, is entitled to great weight.[74] Here, Jennings's description of her pain, and her testimony that she could not perform any level of work, was fully supported by Dr. Hunter's opinions and records, which were based on objective medical evidence gathered during the seven years he acted as Jennings's surgeon and treating physician.[75]

Because Jennings's subjective complaints were entitled to "great weight," the ALJ was required to provide a "thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work."[76]

Here, the ALJ did not adequately justify his decision to reject the credibility of Jennings's subjective complaints. In part, he based his credibility assessment on Jennings's testimony that she "lived a fairly active life style that included dating, going out to restaurants and movies along with other related activities, and she married her present husband and shared the responsibility of raising her husband's two young children."[77] Disability, however, does not mean that a claimant must "vegetate in a dark room, excluded from all forms of human and social activity."[78] Sporadic and transitory activities such as school, hobbies, housework, vacations, social activities

---

[74] Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979).

[75] See R&R at 23–24 (providing a detailed description of Jennings's testimony about her symptoms and difficulty working).

[76] Schaudeck, 181 F.3d at 434.

[77] R. 18.

[78] Smith, 637 F.2d at 971.

-17-

or use of public transportation cannot be used to show an ability to engage continuously in substantial gainful activity.[79]

Where competent evidence supports a claimant's complaints, the ALJ must explicitly weigh the evidence, and explain its decision to reject the evidence.[80] By failing to view Jennings's testimony in light of the medical records and opinions of her physician, and improperly weighing Jennings's daily living activities, the ALJ failed to properly evaluate her credibility.

Therefore, the ALJ failed to accord significant weight to the strength of the objective medical evidence provided by Dr. Hunter, and its corroboration of the Plaintiff's complaints of pain. Accordingly, his conclusion that Jennings possesses the residual capacity to perform sedentary work is not supported by substantial evidence.

3.   Reversal is the Appropriate Relief

The Magistrate Judge recommended that this case be remanded to the ALJ for a fourth consideration of the record evidence.[81] Reversal, however, as opposed to remand, is the appropriate remedy "when the administrative record of the case has been fully developed and when substantial evidence in the record indicates that the claimant is disabled and entitled to benefits."[82] Here, the Magistrate did "not consider the record to be substantially clear as to the

---

[79] See Fargnoli, 247 F.3d at 40 n.5.

[80] Benton ex rel. Benton v. Bowen, 820 F.2d 85, 88 (3d Cir. 1987).

[81] R&R at 37.

[82] Morales 225 F.3d at 320; see also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 357–58 (3d Cir. 2008); Podedworny, 745 F.2d at 221–22.

-18-

question of disability."[83]  We disagree.

A district court, after reviewing the decision of the Secretary, may affirm, modify, or reverse the Secretary's decision with or without a remand to the secretary for a rehearing. The decision not to remand for a rehearing of the disability evidence is "especially appropriate when the disability determination process has been delayed due to factors beyond the claimant's control."[84]

Here, the determination that Jennings was not disabled came down to the fifth and final step of the SSA's disability determination process, at which the agency must establish that a clamant is capable of performing jobs existing in significant numbers in the national economy. The ALJ determined that Jennings was capable of doing so, despite the fact that Dr. Hunter, a hand specialist and Jennings treating physician for over seven years, repeatedly opined that Jennings was completely disabled and incapable of work, *throughout the relevant time period*. Although the medical expert's opinion was to the contrary, as discussed *supra*, it deserves minimal weight because it was not based on a personal examination and because it was rendered by a less-qualified cardiologist. With no explanation by the ALJ, it is impossible to determine why the opinion of a cardiologist with no documented experience in upper-body neurological impairments, who did not review Jennings's records until fourteen years after her disability-onset date, would trump the opinions and recommendations of a hand-specialist and treating physician, that were created during the relevant time period.

The present record—spanning over seven hundred pages—contains an extensive medical

---

[83] R&R at 37.

[84] Brownawell, 554 F.3d at 358.

record, consisting primarily of the records of Jennings treating physician, compiled during the period in question. It is unclear what further evidence is available to show the extent of Jennings's disability between 1994–1998. Moreover, Jennings, like the claimants in Brownawell v. Commissioner of Social Security,[85] Podedworny v. Harris,[86] and Morales v. Apfel,[87] has waited a remarkably long time for a final decision on her disability application, which was filed almost eight years ago.[88] Jennings has had three hearings before an ALJ, followed by three petitions to the appeals council, and an appeal to the district court. The unequivocal testimony of her treating physician, which corroborates Jennings's subjective complaints of pain, repeatedly indicates that Jennings was unable to work between 1994 and 1998. Accordingly, reversal is the appropriate relief under these circumstances.

## IV. CONCLUSION

For the foregoing reasons, and those set forth in the Report and Recommendation, this Court reverses the Commissioner's denial of benefits, and adopts in part the Magistrate Judge's R&R. We award benefits to Plaintiff, dating back to the onset of disability on September 20, 1994, and remand to the Secretary for a speedy calculation of benefits to which Plaintiff is entitled from that onset date. An appropriate order follows.

---

[85] 554 F.3d 352 (3d Cir. 2008).

[86] 745 F.2d 210 (3d Cir. 1984).

[87] 225 F.3d 310 (3d Cir. 2000).

[88] See Id. (directing an award of benefits eight years after claimant filed for disability); Podedworny, 745 F.2d at 223 (directing an award of benefits five years after claimant filed for disability); Morales, 225 F.3d at 320 (directing an award of benefits ten years after claimant filed for disability).